**Frank M. SANNES, Appellant,**
**(Plaintiff below),**

v.

**Margaret Elma OLDS, Appellee,**
**(Defendant below).**

**No. 3769.**

Supreme Court of Wyoming.

Sept. 19, 1969.

David A. Scott and Murane, Bostwick, McDaniel, Scott & Greenlee, Casper, for appellant.

William S. Bon, Casper, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Frank M. Sannes sued Margaret Elma Olds for $33,585.39 for physical damages attributable to defendant's having negligently driven her motor vehicle against that operated by him on U. S. Highway 220, one and a half miles west of the Fairgrounds road in Natrona County on March 27, 1967. Defendant answered, admitting the accident but denying negligence, proximate cause, and her responsibility; asserted that the complaint failed to state a claim; and alleged that a dog ran in front of the two vehicles, creating a sudden, unexpected emergency and a sequence of events not the proximate result of defendant's negligence but rather due to sudden, unforeseen circumstances not the result of any human fault. Defendant also charged plaintiff with contributory negligence which caused his own injuries.

The court tried the case without a jury and at the conclusion found generally for defendant and against plaintiff, issuing judgment accordingly; and plaintiff has appealed.[1]

The facts are not in substantial dispute. On March 27, 1967, after sundown and some time after seven o'clock, plaintiff was driving his Volkswagen bus westerly on U. S. Highway 220 on the outside lane of traffic at approximately forty-five miles per hour. The highway consisted of four traffic lanes, two east and two west, with a median strip between. The defendant was also traveling westerly on the highway, driving her automobile at a speed of about sixty miles per hour as she started to pass. When the front of her car was even with the center of the Volkswagen bus, a dog came from the median strip, being on her left side, close enough to her car that she felt she had to slow down to avoid hitting him. She testified she instinctively slammed on her brakes, causing her car wheels to lock, and her automobile skidded into the outside lane of traffic. At some point following her braking, the two vehicles came in contact with each other. According to plaintiff after the front of defendant's car was beside him she turned the steering wheel towards him and their vehicles "bumped," the front portions coming together. He said he was startled, his only thought was to get away from her, and he used "extreme turning on the steering wheel" in a northerly direction, his car going into a skid and overturning. Defendant said when she saw the dog come out from the median strip to her left she knew if she didn't slow she would hit it and slammed on her brakes. She did not recall turning her wheel to the right or to the left but said she held on to the wheel so tightly that her hands were sore for two or three days. Her vehicle veered to the right and she stopped at the curb. She said she knew the two vehicles had bumped but did not know whether this was caused by a gust of wind, his veering into her or her into him; that the bump must have occurred right in the very center of the two lanes and was so slight that the only damage to her car was a small dent in the piece of chrome on the right fender. The patrolman who investigated the accident testified that the driver of a motor vehicle loses control when its wheels are locked, that it was windy on the day of the accident; that he was unable to determine a point of impact; that the beginning skid marks from defendant's vehicle showed her right tires 1 foot 8 inches over the center line, in her lane of traffic, the total length

---

1. There was no request for findings of fact and conclusions of law permitted under Rule 52(a), W.R.C.P.

of the skid marks from her vehicle being 217 feet 1 inch; that plaintiff's vehicle left skid marks of 24 feet 8 inches; and that he found nothing that looked to him like marks made from the application of brakes from plaintiff's vehicle. Plaintiff said he saw the dog on the north side of the highway about one hundred yards in front of him before he was aware that defendant was overtaking him. Other circumstances concerning the facts will be referred to in our later discussion. The defendant's only suggestions of a conflict in the testimony relates to the direction the dog was going at the time it ran onto the highway but says that this conflict is somewhat immaterial since both parties agree that the dog ran in front of defendant's vehicle while she was in the act of passing.

Plaintiff's appeal is based on contentions that (a) defendant failed to prove an emergency existed, (b) the court erred in applying the sudden emergency doctrine since defendant could have extricated herself between the time the alleged emergency occurred and the collision, (c) defendant failed to exercise the degree of care imposed upon her in an emergency situation, and (d) defendant was negligent as a matter of law and her negligence was the proximate cause of the accident, making her liable for provable damages. For reasons which will be apparent in our discussion, we conclude that the four bases are intermingled so that they cannot properly be separated and must here be addressed together or at least in pari materia.

■ Plaintiff argues that defendant's pleading the doctrine of sudden emergency inserted new matter into the case and placed the burden of proof upon her insofar as the doctrine is concerned. Defendant responds that a motorist must exercise reasonable or ordinary care in the operation of his vehicle and says that an emergency situation is merely one of the circumstances to be taken into consideration in determining whether or not negligence exists, insisting that although at certain times the burden of going forward with the evidence

may have been upon her the overall burden of proving negligence by a preponderance of the evidence was upon plaintiff. While some merit undoubtedly resides in the contentions of both parties, there seems to be no reason why the introduction of semantics should be allowed to warp a proper perspective of the parties' obligations. The existence of an emergency is not an affirmative defense, but it is one of the circumstances to be considered by the finder of fact in determining whether or not a defendant is guilty of negligence. Blackwell v. Regal Cab Company, 114 U.S.App.D.C. 397, 316 F.2d 398, 399; Herrington v. Pechin, 198 Kan. 431, 424 P.2d 624, 627; McKeever v. Batcheler, 219 Iowa 93, 257 N.W. 567, 568. Some effort of the parties is expended in defining imminent peril and sudden emergency; but in the light of numerous Wyoming cases which have discussed the subject generally, we find no occasion to spend time on abstract definitions. Rather it may be more helpful to consider opinions in which there was an unexpected appearance of a relatively small animal in the path of a moving automobile, and since no Wyoming case has dealt with such a situation the holdings in other jurisdictions are relevant.

The evidence here is that the dog which ran in front of defendant's car appeared to be smaller than a collie, larger than a water spaniel, and perhaps the size of a sheep dog. As indicated in the statement of facts, there was not complete agreement between the parties as to the direction from which the dog came or the time when it could reasonably have been seen. The plaintiff testified that just before he had noticed Mrs. Olds' car he had seen the dog approximately one hundred yards ahead of him on the north edge of the road. The dog was then running across the road, traveling south and then heading southeasterly. He said when Mrs. Olds had come up to a position where he could no longer see her in the rear-view mirror but through his side, out of the corner of his eye, the dog had come across and was on the edge of the road, i. e., the inside of the

westbound lane. Mrs. Olds on the other hand testified that, while she was passing plaintiff's vehicle, the dog came out from the median strip to the left of her car.

There was some question regarding the exact time of the accident and whether or not it was dark. Plaintiff said the accident occurred somewhere after seven, that the sun was completely down but that it was not dark and although he had his lights on dim this was only to meet the requirements of the law and that they were not needed in order to see. Mrs. Olds said it was after eight, that her lights were on, and that it was completely dark. The patrolman was notified of the accident at 8:24 p.m. and "through the people that were involved in the accident came up at a time at 8:15." He said it was a windy evening and dark when he arrived. The parties stipulated that on the date of the accident sunset occurred at 6:24 p.m. and a weatherman would testify if called that it was dark twenty to forty minutes after sundown, depending on cloud cover.

As background for analysis of cases from other jurisdictions dealing with occurrences after small animals have created emergencies, it is desirable to review basic holdings of this court on the subject of sudden emergencies and imminent peril. Hines v. Sweeney, 28 Wyo. 57, 201 P. 165, 172, 201 P. 1018, which incidentally related to a railroad rather than a motor vehicle accident, recognized the rule that when one must act suddenly in the face of imminent danger he is not required to use the same degree of care as at other times, but this rule is applicable only when the person claiming its advantage has been placed in a position of sudden peril without his own fault. Later we noted such limitation in O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 1066, 77 A.L.R. 582, and again in Dallason v. Buckmeier, 74 Wyo. 125, 284 P.2d 386, 389. In McClanahan v. Woodward Construction Company, 77 Wyo. 362, 316 P.2d 337, 340, we said that it was the province of the finder-of-fact to determine from all the circumstances disclosed by the record whether the emergency had been created by the person claiming the benefit of the rule, and by reasonable implication we held the existence or nonexistence of an emergency to be thus determinable.

We then turn to opinions which have dealt with emergencies arising from the sudden appearance of dogs on highways. A case which has had much attention and been cited often is Massie v. Barker, 224 Mass. 420, 113 N.E. 199, where plaintiffs, who had been riding in a wagon, were injured by a motor vehicle which came from behind. The driver of the approaching vehicle testified that as he got opposite the wagon a large sheep dog jumped in front of him and on the impulse of the moment he yanked the car to prevent striking the dog and skidded, hitting the wagon and causing the injuries. The court held that whether the driver's action measured up to the standard of common care was a question of fact, saying, 113 N.E. at 200:

"* * * Manifestly one exercising due care cannot hesitate in preferring the safety of human beings to that of dogs. It could not have been ruled as matter of law that the defendant's driver was in the exercise of due care. The jury might have found that due care required him to observe with greater accuracy the direction of his car, to determine not to deflect so much toward the right to avoid the dog, and to hold his faculties under such control as not to be disconcerted by the appearance of the dog. Whether the surprise occasioned by the sally of the dog from the yard into the highway was such as reasonably to cause the driver of the truck to be governed for the instant by impulse rather than by sound judgment, whether it was a discomposing exigency or a usual peril of the road, was a matter for the jury."

In Burhans v. Burhans, 159 Md. 370, 150 A. 795, where a driver on a downgrade in order to avoid a dog turned her automobile suddenly, applied the brakes, hit a culvert, and upset, injuring one passenger

fatally, another seriously, the court said, 150 A. 797:

> " * * * the mere fact that the injuries resulted from the quick and sudden turning of the car and the application of the brakes, did not in itself show that the defendant was guilty of negligence, unless it be further shown that an ordinarily prudent person in the perilous situation in which she was placed, would not have attempted to avoid the collision with the dog, or would not have done what she did in the operation of her car in an attempt to avoid striking the dog."

Where in Becker v. Beir, 275 App.Div. 146, 89 N.Y.S.2d 536, defendant's car made a sudden stop to avoid hitting a dog, causing injury to a motor vehicle coming behind and to its passenger, it was held that whether the defendant was confronted with an emergency was a question of fact for the jury.

In Kuether v. Locke, 261 Minn. 41, 110 N.W.2d 539, dealing with a rear-end collision, the driver of the leading car, charged with negligence, said that she had seen a dog dart out behind a building into the street in front of the car, was very concerned that she might strike the dog, and consequently without looking in her rearview mirror applied the brakes hard enough to make a sudden stop, causing the collision with the car coming from behind. There was a verdict for defendant, a denial of a motion by the plaintiffs for a judgment notwithstanding the verdict, which the supreme court affirmed. The case is interesting in its analysis of various situations involving sudden emergencies and particularly those caused by the unexpected appearance of animals on the highway. In the course of the opinion, it was stated, 110 N.W.2d at 544:

> "We therefore hold that when a driver is unexpectedly confronted with an animal on the highway, and a rear-end collision occurs as a result of his making a sudden stop to avoid striking the animal, it is a fact question for the jury as to whether the driver acted with reasonable care and prudence. In making its determination the jury should consider all of the surrounding circumstances, including the size of the animal and the likelihood of injury to the driver and passengers, or persons in a following vehicle, resulting from a collision with the animal, weighed against the possibility of injury which might occur from a sudden stop or from other evasive action to avoid the animal."

The rationale that determination of liability depends on the exercise of reasonable care depending on the various circumstances would seem likewise to apply to an accident causing injury to a car traveling in the same direction in an adjacent lane.

The case of Johnston v. Ecord, 196 Kan. 521, 412 P.2d 990, was an action by an administratrix for the personal injury and death of her decedent driver of the lead car in an accident occurring on a four-lane highway brought about by the sudden appearance of a dog in front of the first car, the driver of which suddenly applied her brakes and slowed sharply. The trial court ruled as a matter of law not only that defendant was guilty of negligence, the proximate cause of the collision, but also that the plaintiff's decedent was not guilty of charged contributory negligence. In a reversal of that judgment, the court discussed numerous similar cases and arrived at a well-reasoned conclusion that such circumstances call for a determination by the trier-of-fact.

We advert then to the four grounds of appeal asserted by the plaintiff in the instant case, namely, defendant's failure to prove existence of an emergency, to prove the emergency continued until the time of the "collision," her failure to exercise the proper degree of care in such situation, and that the evidence proved her negligence and responsibility as a matter of law. It has already been indicated the charges of error are so closely related as to inhibit any separate treatment, at least of an extended nature. Earlier herein it is made clear that the existence of an

emergency is not an affirmative defense but rather one of various circumstances to be considered in determining whether the actions of each of the parties were those of a reasonably prudent person in the situation which existed at the time of the accident. We conclude that the record discloses occurrences which justified the trial court in holding that an emergency existed.[2]

Plaintiff relies on the statement in 38 Am.Jur., Negligence § 41, p. 687:

" * * * Before one can absolve himself from liability for injury caused by acting upon emergency to save himself from harm, he must show not only that an emergency existed which was brought about by no negligent act of his own but also that the resultant injury could not have been prevented after the peril to him had ceased. * * * "

However, it is unclear whether or not counsel means thereby to imply the placing of a special burden of proof upon the one claiming the existence of an emergency. In any event the authorities relied upon do not so suggest but rather hold that such must appear from a consideration of all of the facts and circumstances surrounding the accident.

Plaintiff's third claim, the failure of defendant to exercise reasonable care in the emergency situation, falls in the same category as the first two, being so intermingled as to defy separate determination.

We pass then to the fourth charge of error, that defendant was negligent as a matter of law, which in essence is the gist of the entire appeal. A careful study discloses no precedent for such a holding. The universal view of the courts seems to be that a negligence case involving an emergency situation presents questions which must be resolved by the finder-of-fact, and we have been cited to no decisions on accident cases wherein a small animal appeared suddenly before a motor vehicle and negligence of a party was found to have existed as a matter of law. Nothing in the present case makes it an exception. Moreover, analysis of the record discloses evidence from which the trial court, depending on its interpretation and evaluation, was justified in concluding that an emergency existed, that it continued to the time of the "collision," and that defendant exercised the degree of care imposed upon her in such a situation.

Affirmed.

2. We have previously called attention to the absence of request for findings of fact and conclusions of law; and it is, of course, entirely possible that the trial court in this case did not consider it necessary to determine if an emergency situation existed.