506 P.2d 1084

Paula Sue **LOWERY**, by and through her Guardian ad Litem, James Lowery, Appellant,

v.

Thomas Kenneth **TURNER** et al., Appellees.

No. I CA–CIV 1828.

Court of Appeals of Arizona, Division 1, Department B.

March 8, 1973.

Rehearing Denied March 29, 1973.

Review Denied April 24, 1973; July 3, 1973.

Moore & Romley by Craig R. Kepner, Phoenix, for appellant.

Renaud, Cook, Miller & Cordova, P. A., by J. Gordon Cook, Phoenix, for appellees.

EUBANK, Presiding Judge.

This appeal was taken by the plaintiff from a jury verdict and judgment in favor of the defendants following the trial of a motor vehicle personal injury action based upon the alleged negligence of the defendant.

Taking all inferences to be drawn from the evidence in support of the jury verdict, the facts are as follows:

On June 11, 1968, James Lowery, the plaintiff's father and guardian ad litem here, sold his 1956 Buick automobile to the defendant, Thomas Turner, for $200 cash. Mr. Turner was 17 years old at the time and was the plaintiff's boy friend of several years' duration. Although he had driven the vehicle approximately 20 miles before the purchase, the defendant was unaware that the brakes were defective in a panic or emergency braking situation.

On June 12, the night following defendant's purchase of the vehicle, the defendant was driving in the vehicle with the plaintiff, who was seated next to him on the front seat, and his brother, who was seated to the right of the plaintiff. At approximately 11:30 P.M. the defendant and his companions were traveling west on Bell Road, approximately one-quarter of a mile east of the Cave Creek Road intersection. Bell Road at this point is a straight two-lane county road for east-west traffic. The surface of asphalt was dry; the weather was clear and the night was dark —there were no street lights to provide additional illumination. As they approached this point at approximately 40 miles per hour, within the speed limit, the defendant saw a dog on Bell Road, approximately 40 feet ahead, "angling across the road". At that instant he saw the lights of a vehicle coming towards him traveling east in the opposite lane. He testified that "the dog was going to my left and I wanted to go around the right of it, to hope (sic) from missing the dog and got back on the road." In this maneuver of going right to the dirt shoulder of the road he applied the brakes, and the vehicle went into a right-rear-end skid which spun the vehicle back across Bell Road to the south and into the eastbound lane of traffic. This resulted in a collision with a 1965 Ford pickup truck driven by James Riley. The impact took place on Riley's side of the road, the eastbound traffic lane, with the front end of Riley's truck striking defendant's vehicle on its right side immediately behind the front seat. Both Riley and his passenger, Helen Glossner, corroborated the defendant's view of the accident; and a large German Shepherd dog was found severely injured and lying by the north side of Bell Road, where the investigating officer, after receiving permission, shot it to relieve it of its suffering. Several persons were injured as a result of the collision, including the plaintiff.

Preliminarily we note that the plaintiff has failed to comply with Rule 5(b)7, Rules of the Supreme Court, 17 A.R.S., requiring that the questions presented for review be expressed in the terms and circumstances of the case. Since the brief rather clearly outlines the issues and the defendant apparently had no difficulty in answering the issues raised, we will not dismiss the appeal, but will consider it on its merits.

The four issues raised by the plaintiff can be stated as follows:

1. Did the trial court err in giving defendant's requested sudden emergency instruction?

2. Did the trial court err in refusing to give plaintiff's requested instruction on the violation of A.R.S. § 28–722?

3. Did the trial court err in permitting defendant's expert witness to testify as to his opinion concerning the condition of the brakes and the cause of the accident?

4. Did the trial court err in refusing the plaintiff's request to put on rebuttal testimony?

## THE SUDDEN EMERGENCY INSTRUCTION

The trial court instructed the jury, in part, as follows:

"In the operation of a motor vehicle, a minor must exercise the same degree of care as an adult. A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence, or the appearance of imminent danger to himself or to others is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at the moment he does what appears to him to be the best thing to do and if his choice and manner of action are the same as might have been followed by an ordinarily prudent person, under the same conditions, he does all the law requires of him, although in the light of after events it

should appear that a different course would have been better and safer.

"If a motor vehicle driver himself created the sudden emergency or brought about the perilous situation through his own negligence, he cannot avoid liability for an injury, merely on the ground that his acts were done in the stress of a sudden emergency. He cannot shield himself behind an emergency created by his own negligence."

The form of this instruction was indirectly approved in our opinion in Valentine v. Faulkner, 12 Ariz.App. 557, 473 P.2d 482 (1970). The question before us *sub judice* is whether it should have been given to the jury at all.

The plaintiff contends that the accident resulted from the defendant's own antecedent negligent conduct in his failure to observe the roadway ahead, and in support of her contention cites our opinion Cano v. Neill, 12 Ariz.App. 562, 473 P.2d 487 (1970), where we said:

"The instruction [sudden emergency] is only proper when the defendant is free of negligent conduct prior to the 'emergency' or crisis and the acts which it precipitates." (12 Ariz.App. at 571, 473 P.2d at 496).

In Cano we held that the sudden emergency instruction should not have been given where the sudden emergency consisted of a sticking accelerator which caused the accident when the defendant-driver testified that he was exceeding the speed limit and made no attempt to slow his truck "until well after he passed the two warning signs which had commanded a 'slow' speed."

In the instant case the plaintiff argues that the defendant's failure to see a full-grown German Shepherd dog on the right side of the roadway until he was only 40 feet away from it was negligent conduct which precludes the instruction.

■ We disagree. In our opinion, under the facts of this case, the trial court was correct in giving the "sudden emergency" instruction to the jury because the circumstances do present a question of fact: whether the defendant failed to keep a proper lookout and reacted as an ordinarily prudent man would have done under the circumstances. We disagree with the plaintiff that the failure to see a large dog at night until a driver is 40 feet away from it requires a conclusion, as a matter of law, that the defendant was negligent in failing to keep a proper lookout and thus precludes the giving of the emergency instruction. *See* Valentine v. Faulkner, supra. The instruction by its own terms advises the jury that if the defendant negligently caused the emergency situation he may not avoid liability for his actions. The defendant's testimony was that when he saw the dog it was one foot distant into and on the westbound lane of Bell Road traveling at an angle to the west towards the south or towards the east lane of travel. He then attempted to evade the dog by going right to the north shoulder of the road. This circumstance in our opinion presents a proper question for the jury, and the "sudden emergency" instruction lays out the question fairly.

■ The plaintiff further contends that the "sudden emergency" instruction is argumentative; constitutes a comment on the evidence; and is contrary to the standard negligence doctrine of "reasonable care under the circumstances." These criticisms are expressed primarily in two law review articles: Molloy, 6 Ariz.L.Rev. 27 (1964) and Law Note, 13 Arizona L.Rev. pp. 553–556 (1971). We must answer each of these contentions in the negative since our Supreme Court has made it perfectly clear that such legal limitations do not extend to the "sudden emergency" instruction used herein. *See* Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962); *see also* Valentine v. Faulkner, supra.

## THE A.R.S. § 28–722 INSTRUCTION

■ The plaintiff requested that the trial judge instruct the jury that:

"Drivers of vehicles, proceeding in opposite directions shall pass each other to

the right, and upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least one half of the main traveled portion of the roadway as nearly as possible."

This requested instruction is in the exact language of A.R.S. § 28–722.

Plaintiff contends that the trial court committed reversible error in refusing to give this instruction because it involves the legal theory of the plaintiff and was supported by the evidence. Our review of the record shows that the instruction is not supported by the evidence. While it is true that the investigating officer concluded in his report made at the scene that the accident had been caused by the defendant driving his vehicle into the eastbound traffic lane, all of the direct and physical evidence showed that this event did not happen—the impact being behind the right-hand seat of the defendant's automobile with no damage to its front end. The evidence is overwhelming that the accident occurred exactly as the defendant said it did: he turned right to avoid the dog, placing the right wheels of his vehicle on the dirt shoulder of the road and when he applied his brakes the spin occurred and the accident resulted. In other words, the placement of defendant's vehicle in the wrong lane of traffic was completely involuntary. Here the officer's conclusions about how the accident occurred were not supported by substantial evidence. In fact they were opposed to the physical facts. The negligence of the defendant, if any, must have occurred prior to his vehicle ending up in the opposite lane of traffic and consequently the trial court did not err in refusing to instruct the jury on A.R.S. § 28–722, it being inapplicable. Rowley v. Rowley, 7 Ariz.App. 418, 440 P.2d 54 (1968).

Reviewing the instructions as a whole, it is our opinion that the competing theories were fairly presented to the jury.

## TESTIMONY OF THE EXPERT WITNESS

The only expert witness who testified at the trial was Mr. William Blair, the owner and operator of Blair Automotive and Auto Parts in Phoenix. He was called as an expert witness for the defendant and testified that the cause of the accident was a combination of defective brakes and the braking action of defendant's vehicle's two left wheels on the road asphalt surface and the two right wheels on the hard-gravel surface which caused the vehicle to spin to the right and across the road to collide with the eastbound pickup truck. Basically, plaintiff attacks the qualifications of the expert, the basis or foundation for his opinions, and the opinions themselves.

Our review of the record supports the trial court's decision to permit Mr. Blair to testify as an expert witness.

His experience and background as a mechanic since 1930, a garage owner since 1939, a wrecking yard operator since 1939, and a race driver for 14 years, was sufficient to support the trial court's decision to permit him to testify as an expert witness. Such a decision rests in the sound discretion of the trial court. Board of Regents v. Cannon, 86 Ariz. 176, 342 P.2d 207 (1959); M. Udall, Arizona Law of Evidence, §§ 21–27 (1960).

More specifically, plaintiff complains that Mr. Blair expressed opinions regarding the cause of a skid and its relationship to speed and to the turning radius of "standard American cars" which were improper. This line of questioning was not objected to by the plaintiff until after it had run its course, and although its materiality was at the perimeter of causation, we cannot say that the trial judge was obliged to strike the evidence at that stage of Mr. Blair's testimony. Further, we fail to see how the plaintiff was prejudiced by such testimony.

In addition plaintiff argues that Mr. Blair did not see the vehicle or brakes

until two and one-half years after the accident; that the chain of custody of the vehicle was not sufficiently established; and that the condition of the brakes at the time of the accident and at the time of Mr. Blair's examination was not sufficiently established by the evidence to be the same.

Our review of the record convinces us that there was sufficient evidence in this regard to go to the jury. These matters were vigorously presented to the jury and any deficiencies went to the weight of Mr. Blair's *opinion* testimony.

Plaintiff cites St. Gregory's Church v. O'Connor, 13 Ariz.App. 421, 477 P.2d 540 (1971) and Bogard G. M. C. Co. v. Henley, 92 Ariz. 107, 374 P.2d 660 (1962) and in support of her argument that Mr. Blair's testimony constituted a flagrant and fundamental invasion of the province of the jury and reversible error. We don't read either case in that manner and consider them inapposite to the expert testimony here.

## REBUTTAL TESTIMONY

Plaintiff's last issue is that the trial court erred in refusing her the right to put on rebuttal testimony. The nature of the proffered rebuttal testimony is described in the opening brief as follows:

> ". . . An offer of proof was made to the effect that Paula would testify that on the night before the accident, the defendant Turner was traveling in the same vehicle at approximately 80 miles an hour and applied the brakes to slow down to make a turn and the car did not swerve to the left as the alleged brake expert indicated it would. . . ."

■ The record shows that plaintiff testified to these identical matters on direct examination and on cross-examination.

■ Under such circumstances, we fail to see how the plaintiff was prejudiced by the ruling excluding rebuttal evidence. Jansen v. Lichwa, 13 Ariz.App. 168, 474 P.2d 1020 (1970). Rebuttal is not proper when its purpose is to permit repetitious testimony. Where a witness has testified fully on direct and cross-examination, the trial judge should not permit her to repeat her testimony again in the guise of rebuttal evidence. Riley v. State, 50 Ariz. 442, 73 P.2d 96 (1937); M. Udall, Arizona Law of Evidence, § 4 (1960).

The judgment is affirmed.

JACOBSON, Chief Judge, Division 1, and HAIRE, J., concur.